**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

KASHANDA RENEE MORRIS,

               Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

               Defendant.

1:19-cv-13744-NLH

**OPINION**

---

**APPEARANCES:**

ALAN H. POLONSKY
POLONSKY AND POLONSKY
512 S. WHITE HORSE PIKE
AUDUBON, NJ 08106

    *On behalf of Plaintiff*

JAMES AUSTIN MCTIGUE
SOCIAL SECURITY ADMINISTRATION
300 SPRING GARDEN ST
6TH FLOOR
PHILADELPHIA, PA 19123

    *On behalf of Defendant*

**HILLMAN**, District Judge

This matter comes before the Court pursuant to Section

205(g) of the Social Security Act, as amended, 42 U.S.C. §

405(g), regarding Plaintiff's application for Disability

Insurance Benefits ("DIB")[1] under Title II of the Social

---

[1] DIB is a program under the Social Security Act to provide
disability benefits when a claimant with a sufficient number

Security Act.  42 U.S.C. § 423, et seq.  The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled at any time since her alleged onset date of disability, January 15, 2011.  For the reasons stated below, this Court will affirm that decision.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

On December 18, 2014, Plaintiff, Kashanda Renee Morris, protectively filed an application for DIB,[2] alleging that she became disabled on January 15, 2011.  Plaintiff, who was 27 years old at the time of her alleged disability onset date,[3] claims that she can no longer work as a nurse assistant because of her lumbar degenerative disc disease, cervical degenerative disc disease, and bilateral carpal tunnel syndrome.

After Plaintiff's claim was denied initially and upon

---

of quarters of insured employment has suffered such a mental or physical impairment that the claimant cannot perform substantial gainful employment for at least twelve months.  42 U.S.C. § 423 et seq.

[2] A protective filing date marks the time when a disability applicant makes a written statement of his or her intent to file for benefits.  That date may be earlier than the date of the formal application and may provide additional benefits to the claimant.  See SSA Handbook 1507; SSR 72-8.

[3] Under the regulations, Plaintiff was defined as a "younger individual" (age 18-49).  (20 C.F.R. § 404.1563.)

reconsideration, Plaintiff requested a hearing before an ALJ, which was held on December 11, 2017.  On June 26, 2018, the ALJ issued an unfavorable decision.  Plaintiff's Request for Review of Hearing Decision was denied by the Appeals Council on April 22, 2019, making the ALJ's decision final.  Plaintiff brings this civil action for review of the Commissioner's decision.

## II.  DISCUSSION

### A.   Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits.  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Substantial evidence means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.  The inquiry

is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).  "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000).  Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him.  Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although an ALJ, as the fact finder, must consider and evaluate the medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004).  In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182.  However, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards.  Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.    Standard for DIB**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  See 42 U.S.C. § 1382c(a)(3)(A).  Under this definition, a Plaintiff qualifies as disabled only if her physical or mental impairments are of such severity that she is not only unable to perform her past relevant work, but cannot, given her age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work.  42 U.S.C. § 1382c(a)(3)(B) (emphasis added).

The Commissioner has promulgated regulations[4] for

---

[4] The regulations were amended effective March 27, 2017.  See 82 F.R. 5844.  The parties do not indicate that any of the amendments are applicable to the issues presented by Plaintiff's appeal.

6

determining disability that require application of a five-step sequential analysis.  <u>See</u> 20 C.F.R. § 404.1520.  This five-step process is summarized as follows:

1.   If the claimant currently is engaged in substantial gainful employment, she will be found "not disabled."

2.   If the claimant does not suffer from a "severe impairment," she will be found "not disabled."

3.   If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 <u>and</u> has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4.   If the claimant can still perform work she has done in the past ("past relevant work") despite the severe impairment, she will be found "not disabled."

5.   Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not she is capable of performing other work which exists in the national economy.  If she is incapable, she will be found "disabled."  If she is capable, she will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof.  <u>See</u> <u>Wallace v. Secretary of Health & Human Servs.</u>, 722 F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps of the analysis, the burden is on the claimant to prove every

element of her claim by a preponderance of the evidence.  See
id.  In the final step, the Commissioner bears the burden of
proving that work is available for the Plaintiff: "Once a
claimant has proved that he is unable to perform his former
job, the burden shifts to the Commissioner to prove that there
is some other kind of substantial gainful employment he is
able to perform."  Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir.
1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir.
1983).

## C.  Analysis

At step one, the ALJ found that Plaintiff had not engaged
in substantial gainful activity since the alleged onset of
disability.  At step two, the ALJ found that Plaintiff's
impairments of lumbar degenerative disc disease, cervical
degenerative disc disease, and bilateral carpal tunnel
syndrome were severe.  At step three, the ALJ determined that
Plaintiff's severe impairments or her severe impairments in
combination with her other impairments did not equal the
severity of one of the listed impairments.  At step four, the
ALJ determined that Plaintiff had the residual functional
capacity ("RFC") to perform unskilled work at the sedentary
level with certain restrictions,[5]  but that did not include

---

[5] See 20 C.F.R. § 404.1568 (explaining that unskilled work "is

Plaintiff's past relevant work as a nurse assistant.  At step five, the ALJ considered hearing testimony from a vocational expert ("VE") and determined that Plaintiff was capable of performing other jobs in the national economy, such as a surveillance system monitor and a call out operator.

Plaintiff presents two issues on appeal: (1) Whether the ALJ erred in his RFC determination; and (2) Whether the ALJ erred at step five.

### 1.   Whether the ALJ erred in the determination of Plaintiff's RFC

Plaintiff argues that the ALJ failed to reconcile the weight he afforded to the opinion of one of the state consultative examiners, Samuel Sarmiento, M.D., as to Plaintiff's ability to sit and stand with his ultimate determination of Plaintiff's RFC.  Plaintiff argues that this error renders the RFC assessment unsupported by substantial evidence.

A claimant's RFC reflects "what [the claimant] can still do despite [his or her] limitations," 20 C.F.R. § 416.945(a), and the controlling regulations are clear that the RFC finding

---

work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time"); 20 C.F.R. § 404.1567 ("Physical exertion requirements. To determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy.").

is a determination expressly reserved to the Commissioner rather than any medical source, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), 404.1546(c), 416.946(c).

When making the RFC determination, the ALJ is required to:

> [C]onsider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  By objective medical evidence, we mean medical signs and laboratory findings . . . .  By other evidence, we mean . . . statements or reports from you, your treating or nontreating source, and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how your impairment(s) and any related symptoms affect your ability to work. . . .

20 C.F.R. § 404.1529.

Additionally, the RFC assessment takes into consideration all of a claimant's medically determinable impairments in combination, including those that the ALJ has found to be severe, as well as those that are not deemed to be severe at step two.  See 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity.").

Here, the ALJ found Plaintiff's RFC to be as follows:

> After careful consideration of the entire record,
> the undersigned finds that, through the date last
> insured, the claimant had the residual functional
> capacity to perform sedentary work as defined in 20
> CFR 404.1567(a) except that she would have to avoid
> stair climbing, best work at a job that might be
> characterized as posturally immaterial so she could
> shift from a standing to a seated position in a work
> day, occasionally grasping and holding generally
> larger objects with occasional fine fingering.  The
> job would require only understanding and remembering
> simple, routine instructions, carrying out
> repetitive type tasks but dealing with minor or few
> changes in a routine work setting and only making
> simple work related decisions.

(R. at 17.)

"Sedentary work involves lifting no more than 10 pounds
at a time and occasionally lifting or carrying articles like
docket files, ledgers, and small tools.  Although a sedentary
job is defined as one which involves sitting, a certain amount
of walking and standing is often necessary in carrying out job
duties.  Jobs are sedentary if walking and standing are
required occasionally and other sedentary criteria are met."
20 C.F.R. § 404.1567.  "'Occasionally' means occurring from
very little up to one-third of the time.  Since being on one's
feet is required 'occasionally' at the sedentary level of
exertion, periods of standing or walking should generally
total no more than about 2 hours of an 8-hour workday, and
sitting should generally total approximately 6 hours of an 8-
hour workday.  Work processes in specific jobs will dictate

how often and how long a person will need to be on his or her feet to obtain or return small articles." SSR 83-10.

There are special considerations where a claimant needs to alternate between sitting and standing.

> In some disability claims, the medical facts lead to an assessment of RFC which [are] compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for time, but must then get up and stand or walk for awhile before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.)

> There are some jobs in the national economy -- typically professional and managerial ones -- in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferring work skills to such jobs, he or she would not be found disabled. However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a VS should be consulted to clarify the implications for the occupational base.

SSR 83-12.

Plaintiff points to the opinion of Dr. Sarmiento to argue that Plaintiff's ability to meet the sit/stand requirements of sedentary work are not supported by the record. Plaintiff

notes that Dr. Sarmiento found that Plaintiff was unable to sit for more than four hours in a day, and could not stand for more than ten minutes at a time and no more than two hours all day.  Plaintiff argues that the ALJ afforded "great weight" to this opinion of Dr. Sarmiento, who was the only examining doctor in the decision whose opinion was accorded any weight,[6]

---

[6] An ALJ is required to state what weight he ascribes to a medical opinion, but not to other forms of medical evidence. 20 C.F.R. §§ 404.1527(c), 416.927(c) ("How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's medical opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion."). Here, the ALJ articulated what weight he gave to several medical opinions, but some of those opinions derived from state medical consultants who did not personally examine Plaintiff but rather reviewed her medical records. "Generally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you." 20 C.F.R. § 404.1527 (Evaluating opinion evidence for claims filed before March 27, 2017). But an ALJ may afford greater weight to non-examining medical sources so long as he sufficiently explains why. See, e.g., Tisoit v. Barnhart, 127 F. App'x 572, 575 (3d Cir. 2005) (citing Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001)) ("The ALJ did not fail to consider the findings of Mr. Tisoit's examining psychologist in assessing his RFC, but rather set forth and relied upon many of those findings in posing the hypothetical to the VE. We also conclude that the ALJ adequately explained his assignment of greater weight to the findings of the non-examining medical consultant regarding Mr. Tisoit's mental capacity and that his decision to do so is supported by the administrative record."); Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) ("An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided.").

13

but such an opinion does not show that Plaintiff could meet the requirements of sedentary work that she stand or walk no more than about two hours of an eight-hour workday, and sit for six hours of an eight-hour workday.  Further, Plaintiff argues that the RFC's restriction that Plaintiff is limited to "a job that might be characterized as posturally immaterial so she could shift from a standing to a seated position in a work day" cannot be reconciled with the realities of unskilled work, which typically does not allow a person to sit or stand at will.

The Court finds that Plaintiff's arguments are without merit.  In his decision, the ALJ set forth Dr. Sarmiento's findings and the weight he afforded his opinions:

> Dr. Sarmiento concluded on April 10, 2018 that the claimant would be able to walk and stand for a reasonable amount of time with needed breaks (Exhibit 22F). She would be able to sit for a reasonable amount time with needed breaks. No significant balance limitations were observed during the evaluation. She has good use of her upper extremities for movements such as reaching. She has good functionality of her right and left hands. She would be able to handle fine and small sized objects. She has no significant limitations to fingering such as picking and pinching objects.

> Dr. Sarmiento concluded on April 10, 2018 that the claimant could lift 10 pounds occasionally, sit for 4 hours in an 8 hour work day, stand and walk for 4 hours in an 8 hour work day, she could never reach overhead, or push or pull with the bilateral upper extremities, she could frequently reach in other directions, handle, finger and feel (Exhibit 22F). She could occasionally use foot controls. She could occasionally climb ramps and

14

stairs and never climb ladders or scaffolds, balance,
stoop, kneel, crouch and crawl. She could never be
exposed to hazards, humidity and wetness, dust, odors,
fumes, and pulmonary irritants, extreme cold and
vibration.

The undersigned assigns some weight to Dr. Sarmiento's
opinions (Exhibit 22F). The undersigned assigns great
weight to his opinion that the claimant would be able to
walk and stand for a reasonable amount of time with
needed breaks, sit for a reasonable amount of time with
needed breaks, with no significant balance limitations,
good use of her upper extremities for reaching, she could
lift 10 pounds occasionally. His opinion is consistent
with the medical record as a whole as discussed above.

(R. at 31.)

Contrary to Plaintiff's argument, Dr. Sarmiento's opinion
does support the requirements of sedentary work - in fact, his
opinion exceeds those requirements.  It is true that an eight-
hour day of sedentary work requires no more than two hours of
standing or walking, and for the balance of the eight-hour day
a person must be able to sit for six hours.  It is also true
that Dr. Sarmiento found that Plaintiff could sit for four
hours a day, which is less than six.  But Dr. Sarmiento found
that Plaintiff was capable of standing or walking for two more
hours than the sedentary level minimum, thus making up the
balance of the eight-hour day with walking and standing rather
than sitting, which demonstrates a higher exertional capacity
than the minimum for sedentary work.

To the extent that it must be demonstrated that a

15

claimant is able to sit for six hours regardless of whether she could stand or walk instead, and the ALJ's reliance on Dr. Sarmiento's opinion does not support that requirement, Dr. Sarmiento's opinion is not the only one cited by the ALJ to support his RFC determination.

On May 5, 2014, state medical consultant Zwi Kahanowicz, M.D. found that Plaintiff "could sit for 6 hours in an 8 hour work day." (R. at 77-79.)  The ALJ assigned "great weight" to that opinion.  (R. at 28.)  On April 24, 2015, state medical consultant Mary McLarnon, M.D. found that Plaintiff could "stand and walk for 6 hours in an 8 hour work day, sit for 6 hours in an 8 hour work day." (R. at 87-88.)  On August 11, 2015, state medical consultant Arthur Perrone, M.D. found the same.  (R. at 97-98.)  The ALJ afforded both of these opinions "great weight." (R. at 29.)

Thus, the ALJ's finding that Plaintiff met the durational sedentary work requirements for sitting, standing, and walking is supported by three medical sources in addition to Dr. Sarmiento.  The ALJ's RFC determination is therefore supported by substantial evidence.[7]  See Biestek v. Berryhill, 139 S. Ct.

---

[7] In a single paragraph without any citation to the regulations or law, Plaintiff argues that her due process rights were violated because she did not have the chance to question the VE regarding Dr. Sarmiento's findings because Dr. Sarmiento issued his report after the hearing, and remand should be

1148, 1154 (U.S. 2019) (reiterating that the threshold for
such evidentiary sufficiency under the substantial evidence
standard is not high, and it "means - and means only - such
relevant evidence as a reasonable mind might accept as

---

granted on that basis.  This argument is without merit.  After
the hearing before the ALJ on December 11, 2017, the ALJ
ordered an orthopedic consultative examination with Dr.
Sarmiento to supplement the record, which took place on April
10, 2018.  On May 21, 2018, the ALJ issued a letter to
Plaintiff's attorney providing a copy of the consultative
examination report.  In that letter, the ALJ informed
Plaintiff's attorney that he may submit written comments or
argument regarding the report; he may submit additional
evidence; and he "may also request a supplemental hearing at
which [the claimant] would have the opportunity to appear,
testify, produce witnesses, and submit additional evidence and
written or oral statements concerning the facts and law."  The
ALJ continued, "[i]f you request a supplemental hearing, I
will grant the request unless I receive additional records
that support a fully favorable decision."  The ALJ further
explained that he would "grant a request to question a witness
if [he] determine[d] that questioning the witness is needed to
inquire fully into the issues."  Plaintiff did not request a
hearing, did not request to further question the VE or Dr.
Sarmiento, and did not submit additional written evidence
related to Dr. Sarmiento's findings.  In these circumstances,
Plaintiff's due process rights were not violated.  See Sasse
v. Commissioner of Social Security, 2019 WL 1233553, at *4
(D.N.J. 2019) ("Social Security administrative hearings are
subject to the requirements of due process, Lippincott v.
Commissioner of Social Sec., 982 F. Supp. 2d 358, 385 (D.N.J.
2013) (citing Richardson v. Perales, 402 U.S. 389, 401-02
(1971)) (other citation omitted), and any hearing afforded
a Social Security disability claimant must be full and
fair, Meyler v. Commissioner of Social Sec., 238 F. App'x 884,
889 (3d Cir. 2007) (citing Ventura v. Shalala, 55 F.3d 900,
902 (3d Cir. 1995)).  A claimant must show some prejudice,
however, to establish that his due process rights were
violated. See, e.g., Mayes v. Social Sec. Admin., 190 F. App'x
183, 186 (3d Cir. 2006) (citing Richardson v. Perales, 402
U.S. 389, 401 (1971)).").

adequate to support a conclusion" (citations omitted)).

With regard to the RFC's requirement that Plaintiff be able to alternate between sitting and standing, the ALJ presented this limitation as a hypothetical to the VE at the hearing.  (R. at 64-65.)  The VE testified that even with that requirement, two unskilled jobs existed that could be performed.  Plaintiff challenges the validity of those jobs, which will be discussed below, but the VE's testimony provides substantial evidence to negate Plaintiff's argument that the requirement to alternate between standing and sitting completely erodes all work at the sedentary level.  The regulations also support this conclusion.  See SSR 83-12 (providing that where there is a requirement that a claimant sit or stand at will, a VE "should be consulted to clarify the implications for the occupational base").

**2.   Whether the ALJ erred at step five in relying upon the VE's testimony regarding two alternative jobs Plaintiff could perform**

Once it has been determined that a claimant is not capable of performing her past relevant work, the burden shifts to the ALJ to show that the claimant's RFC permits the claimant to perform other jobs that exist in significant numbers in the national economy.  20 C.F.R. § 404.1520(b)-(f). In this case, the ALJ determined that Plaintiff's RFC rendered

her capable of performing two jobs based on the testimony of
the VE: surveillance system monitor (DOT code 379.367-010)-
between 60,000 to 90,000 jobs (reduced from the original
2,000,000 jobs because the vocational expert testified that
only 30 to 45 percent of the 2,000,000 jobs available for the
surveillance system monitor were at the unskilled level);
and call out operator (DOT code 237.367-014)- 50,000 jobs in
the national economy. (R. at 33.)

Plaintiff challenges the ALJ's conclusion that she was
capable of performing these jobs, not only because of the
erroneous RFC assessment, which the Court has found to be
proper, but also because the statistics underlying the VE's
testimony regarding the number of jobs in the national economy
are significantly flawed.  Plaintiff argues that these
positions are not consistent with Plaintiff's RFC, and that
the VE used outdated data to support his testimony, or
presented numbers "falsely [] made up whole cloth."  (Docket
No. 8 at 15.)  Plaintiff muses, "Is it equitable to base a
decision on an outdated source that stipulates the performance
of a job that by all authoritative sources does not exist?"
(Docket No. 10 at 9.)

The Court has addressed this argument several times
before.  See, e.g., Mariani v. Commissioner of Social

Security, 2019 WL 5418092, at *6 (D.N.J. 2019); Benton v.

Commissioner of Social Security, 2019 WL 2285490, at *7

(D.N.J. 2019); Jean-Pierre v. Commissioner of Social Security,

2017 WL 4316880, at *9 (D.N.J. 2017).  In Benton, this Court

stated:

> The Court notes Plaintiff's philosophical objection to
> the nature of VE testimony and data in Social Security
> cases.  The United States Supreme Court recently touched
> on that issue and observed that if VEs supported their
> conclusions with supporting data, VEs' testimony "would
> be even better – more reliable and probative" and "would
> be a best practice for the SSA and its experts."  Biestek
> v. Berryhill, 139 S. Ct. 1148, 1155 (U.S. April 1, 2019).
> The Supreme Court concluded, however, that VEs do not
> need to provide an applicant with the data supporting
> their testimony regarding suitable jobs and statistics in
> order to "clear (even handily so) the more-than-a-mere-
> scintilla threshold."  Id. at 1156.

Benton, 2019 WL 2285490 at *7.  This Court therefore rejected

the plaintiff's argument that 1,940 tree planter jobs in the

United States did not constitute a "significant number of

jobs" in an economy that employs 155,962,000 people.  Id.

(citing Craigie v. Bowen, 835 F.2d 56, 58 (3d Cir. 1987) (200

jobs); Ahmad v. Comm'r of Soc. Sec., 531 F. App'x 275, 278 (3d

Cir. 2013) (569 jobs); see also Young v. Astrue, 519 F. App'x

769, 772 (3d Cir. 2013) ("[T]here is no precise estimate for

what constitutes 'significant numbers' of jobs under the

Social Security Act.")).

     This Court in Benton also noted the analysis in Jean-

Pierre:

> This Court previously addressed a similar argument where
> the plaintiff questioned the source and validity of the
> VE's statistics that purported to support the
> availability of jobs in the national economy, including
> that the jobs identified by the VE had not been updated
> since 1977 (caretaker, photocopy machine operator, marker
> and addresser) and 1986 (taper and document preparer) and
> were woefully outdated.  Jean-Pierre v. Commissioner of
> Social Security, 2017 WL 4316880, at *9 (D.N.J. 2017).
> This Court found, however:

>> Even though this Court recognizes the concerns
>> expressed by former Judge Posner and the Seventh
>> Circuit, and echoed by Plaintiff in this case, the
>> SSA Regulations direct that an ALJ is to take notice
>> of job information available from various
>> governmental and other publications, such as the
>> Dictionary of Occupational Titles, County Business
>> Patterns, Census Reports, Occupational Analyses, and
>> Occupational Outlook Handbook, as well as engage the
>> services of a vocational expert.  20 C.F.R. §
>> 404.1566(b).  It is not for this Court to reform the
>> methodology that SSA VEs use to determine available
>> and appropriate jobs in the national economy that
>> match a claimant's RFC.  The Court also cannot
>> otherwise direct that an ALJ should not consider the
>> DOT and VE testimony when performing the step five
>> analysis, which would be in contravention of SSA
>> regulations.

> Id. (citations omitted).  The Court notes that the
> Supreme Court in Biestek v. Berryhill, 139 S. Ct. 1148,
> 1153-54 (U.S. April 1, 2019) affirmed the Sixth Circuit,
> which joined "the ranks of unconvinced courts" which had
> rejected the Seventh Circuit's categorical rule
> precluding a vocational expert's testimony from
> qualifying as substantial evidence if the expert had
> declined an applicant's request to provide supporting
> data.

Benton, 2019 WL 2285490 at *7 n.14.

> Thus, this Court reiterates what it has said before:  It

is not the province of this Court to reform the methodology

that SSA VEs use to determine available and appropriate jobs

in the national economy that match a claimant's RFC.

Accordingly, because that methodology is the basis for

Plaintiff's contention that the ALJ erred at step five, the

Court finds Plaintiff's argument unpersuasive.[8]  The same is

_____

[8] The hypothetical presented by the Supreme Court in Biestek is
instructive here:

> [A] vocational expert's testimony may count as
> substantial evidence even when unaccompanied by
> supporting data.  Take an example.  Suppose an expert has
> top-of-the-line credentials, including professional
> qualifications and many years' experience; suppose, too,
> she has a history of giving sound testimony about job
> availability in similar cases (perhaps before the same
> ALJ).  Now say that she testifies about the approximate
> number of various sedentary jobs an applicant for
> benefits could perform. She explains that she arrived at
> her figures by surveying a range of representative
> employers; amassing specific information about their
> labor needs and employment of people with disabilities;
> and extrapolating those findings to the national economy
> by means of a well-accepted methodology.  She answers
> cogently and thoroughly all questions put to her by the
> ALJ and the applicant's lawyer.  And nothing in the rest
> of the record conflicts with anything she says.  But she
> never produces her survey data.  Still, her testimony
> would be the kind of evidence—far "more than a mere
> scintilla"—that "a reasonable mind might accept as
> adequate to support" a finding about job availability. Of
> course, the testimony would be even better—more reliable
> and probative—if she had produced supporting data; that
> would be a best practice for the SSA and its experts.
> And of course, a different (maybe less qualified) expert
> failing to produce such data might offer testimony that
> is so feeble, or contradicted, that it would fail to
> clear the substantial-evidence bar.  The point is only—
> as, again, Biestek accepts—that expert testimony can

true for Plaintiff's argument that the job duties described by the VE do not match Plaintiff's RFC, which argument is based on the resources the VE used to formulate his testimony.[9]

## III. Conclusion

This Court may not second guess the ALJ's conclusions, and may only determine whether substantial evidence supports the ALJ's determinations.  Hartzell v. Astrue, 741 F. Supp. 2d 645, 647 (D.N.J. 2010) (citing Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)) (explaining that the pinnacle legal principal is that a district court is not empowered to weigh

---

sometimes surmount that bar absent underlying data.

Biestek v. Berryhill, 139 S. Ct. 1148, 1155–56 (U.S. 2019).

[9] At the end of the five-step analysis, an ALJ need only establish that a claimant is capable of performing one job that exists in significant numbers in the national economy. Thus, even if the Court accepts Plaintiff's view that Defendant has conceded the inapplicability of the surveillance system monitor position, substantial evidence still supports the ALJ's finding that Plaintiff was capable of performing the call out operator position.  See Sasse v. Commissioner of Social Security, 2019 WL 1233553, at *8 (D.N.J. 2019) (citing Reed v. Commissioner of Social Security, 2018 WL 5617549, at *6 (D.N.J. 2018) (citing Nalej v. Berryhill, 2017 WL 6493144, at *11 (D.N.J. 2017) (citing 20 C.F.R. § 16.966(b))(explaining that SSA regulations provide that work exists in the national economy when there is a significant number of jobs in one or more occupations that an individual can perform, and holding that even if the ALJ erred in finding the plaintiff capable of performing two of three jobs, he did not err as to the third job, and that finding as to only one job was sufficient to support his determination that the plaintiff was not disabled)).

the evidence or substitute its conclusions for those of the ALJ).  For the foregoing reasons, the ALJ's determination that Plaintiff was not totally disabled as of January 15, 2011 is supported by substantial evidence.  The decision of the ALJ will therefore be affirmed.

An accompanying Order will be issued.


Date: May 28, 2020                  s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.